UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>SHAVARIUS SMITH | Crim. No. 3:21cr202 (JBA)<br><br>January 31, 2023 |

**RULING ON PREDICATE CONTROLLED SUBSTANCE OFFENSE ENHANCEMENT**

**(§ 21A-278(B)(1)(A))**

Defendant Shavarius Smith pled guilty to Unlawful Possession of Ammunition by a Convicted Felon on June 24, 2022. This ruling memorializes the bench ruling at his sentencing on January 25, 2023.

U.S.S.G. § 2K2.1(a)(3) sets a defendant's base offense level at 22 if, in addition to the offense involving certain types of firearms, "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The parties dispute whether Defendant's prior state narcotics conviction under Conn. Gen. Stat. § 21a-278(b)(1)(A) qualifies as a "controlled substance offense" for purposes of U.S.S.G. § 2K2.l(a)(3). The Government relies on *Chery v. Garland*, 16 F. 4th 980 (2d Cir. 2021), while the Defendant maintains that § 21a-278 is categorically overbroad, that *Chery* does not apply, and Defendant's base offense level should be 20.

**I.   Legal Standard**

 "The government bears the burden of showing that a prior conviction counts as a predicate offense for the purpose of a sentencing enhancement." *United States v. Savage*, 542 F.3d 959, 964 (2d Cir. 2008). To determine whether a prior conviction qualifies as a controlled substance offense, the Court conducts a two-part inquiry:

> First, in the categorical inquiry, we ask whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense. If so, 'there is no problem, because the conviction necessarily implies that the defendant has been found guilty of' a

1

> predicate offense. *Taylor v. United States,* 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). If, however, the statute of the prior conviction criminalizes both predicate and non-predicate conduct, then the second part of the modified categorical inquiry requires that we ask whether the government has shown that the plea 'necessarily' rested on a fact identifying the conviction as a predicate offense. *Shepard v. United States,* 544 U.S. 13, 24, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

*Id.* at 964. When applying the modified categorical approach, if the statute has a "divisible" structure that "list[s] elements in the alternative, and thereby define[s] multiple crimes," the court "looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of," and then compares that crime with the "relevant generic offense." *Mathis v. United States*, 579 U.S. 500, 505–06 (2016). If the statute "enumerates various factual means of committing a single element," however, the modified categorical approach cannot be applied, and the court must instead apply only the categorical approach described in the first step. *Id.* at 506.

## II. Analysis

There are two issues to be addressed: whether § 21a-278(b)(1)(A) qualifies as a controlled substance offense under the categorical inquiry; and if not, whether Defendant's specific conviction under § 21a-278(b)(1)(A) is a predicate offense under the modified categorical inquiry.

### A. The Categorical Inquiry

The Government argues that *Chery's* conclusion that the proscribed conduct in § 21a-277 is a categorical match to the federal definition of a controlled substance offense governs this case because the proscribed conduct in § 21a-277(a) is the same as § 21a-278. (Gov's Supp'l Mem. at 4-5.) Defendant argues that § 21a-278 is broader than § 21a-277(a) because § 21a-278 makes allowances ". . . for the status of the defendant as a 'drug-dependent person'." (Def.'s Supp'l Mem. at 4.) Defendant further contends that *Chery* is inapplicable because it involved an immigration case rather than a criminal case based on *United States*

2

*v. Gibson,* 55 F.4th 153, 166 (2d Cir. 2022), which cautioned that an immigration determination was not "on-point precedent" involving "the same analysis" as the criminal matter because it was "legally and factually different," and "[l]egally, an alien removal proceeding is not a criminal prosecution."

Application Note 1 of U.S.S.G. § 2K2.1(a)(3) defines "controlled substance offense" through cross-reference to Section 4B1.2(b), which in turn defines a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." The state statute under which Defendant was convicted states that no person may "manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person" a "narcotic substance."

*Chery* viewed each proscribed act in § 21a-277(a) as falling within the definition of a corresponding proscribed act in the Controlled Substances Act ("CSA"). "Dispense" is defined by the Controlled Substances Act ("CSA") as "to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery," 21 U.S.C. § 802-10, and so encompasses the acts of prescribing, administering, and compounding enumerated in § 21a-278. The federal definition of "manufacture" similarly includes "compounding." 21 U.S.C. § 802-15. To "deliver", in turn, means "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical," 21 U.S.C. § 802-8, and thus includes "give" and "sell" as defined in Connecticut; the definition is broad enough to also reasonably include

3

"offer" as an "attempted transfer," since Connecticut defines "offer" as "to present for acceptance or rejection." *State v. Webster*, 308 Conn. 53 (2013).

Defendant argues that § 21a-278 only applies if the defendant is not a "drug-dependent person," which adds as an additional element the requirement for the Government to prove. However, "absence of drug dependency is not an element of the offense," but is rather an affirmative defense according to *State v. Ray*, 290 Conn. 602, 616 (2009). Because the drug dependency provision is not an element, the statute is not overbroad on that basis.

The next step of the categorical inquiry requires determination of whether the proscribed substances match those regulated under the federal definition. *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018) teaches that to qualify as a predicate controlled substance offense, "the state law must criminalize only those substances that are criminalized under federal law." Defendant contends that Connecticut regulates naloxegol, an opium derivative, and ioflupane, a cocaine-related substance, while neither the version of the CSA schedule in effect at the time of Defendant's offense or sentencing criminalized either substance. (Def.'s Supp'l Mem. at 7.)

There are two ways in which Connecticut's definition of "narcotic substance" is broader than the federal definition of a controlled substance. First, Connecticut defines "narcotic substance" as including "opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate. . . ." Conn. Gen. Stat. § 21a-240. The Second Circuit in *Gibson* found that identical wording in N.Y. Pub. Health Law § 3306 (2002) includes naloxegol because it "can be derived from opium alkaloids." Thus, based on *Gibson's* analysis of an analogous statute, the Court concludes Connecticut includes naloxegol in its definition of a narcotic substance, while the federal controlled substances definition does not.

Second, Connecticut also regulates "any . . . isomer" of coca leaves, while the CSA more narrowly defines "isomer" with respect to cocaine as "any optical or geometric isomer" in 21

4

C.F.R. § 1300.01. The district court in *United States v. Holmes,* No. 21-CR-147 (NGG), 2022 WL 1036631, at *8 (E.D.N.Y. Apr. 6, 2022), found that New York's identically worded definition of "isomer" is broader than the federal definition, because "any" isomer is broader than the two narrower categories of "optical" or "geometric" isomers. Based on the analysis in *Holmes,* Connecticut's inclusion of *any* "isomer" of cocaine as a narcotic substance also renders its definition broader than the federal one.

The Court finds that the Government has not met its burden with respect to the categorical inquiry.

### B. Modified Categorical Inquiry

Moving to the modified categorical approach, Defendant's certified conviction states he was convicted of "POSS [sic] W/ INTENT"; while it does not specify whether the possession was with intent to sell or to distribute, both are encompassed by the federal definition. (*See* Notice of Certified Conviction [Doc. # 67] at 4.) However, focusing specifically on subsection (b)(1)(A) of § 21a-278, defining the offense as involving "narcotic substances," this term is broader under Connecticut law than the federal definition of controlled substance, as discussed above. The Government has provided no qualifying document permitting the Court to determine whether Defendant was charged with conduct involving a specific drug, or only of a narcotic substance generally. His certified conviction confirms only that he was convicted of possession with intent to sell or distribute a "NARCOTIC SBSTNCE [sic]" generally under § 21a-278(b)(1)(A). Although the PSR specifies at paragraph 38 that the Defendant was convicted of possessing cocaine, the PSR is not among the list of judicially approved documents upon which the Court can rely under the Supreme Court's decision in *Mathis,* 579 U.S. at 505–06.

## III. Conclusion

For the foregoing reasons, the Court concludes that Defendant's conviction under § 21a-278 does not qualify as a controlled substance offense under either a categorical or modified categorical analysis, and his base level is set at 20.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 31st day of January, 2023.